# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**ROBYN L. VANDEVANDER, as
Personal Representative of the Estate of
JEFFREY ALLEN VANDEVANDER,
deceased,**

        Plaintiff,

v.	Civil Action No. 3:11-CV-85
	(BAILEY)

**RALPH JIMENEZ,**

        Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

On this day, the above-styled matter came before this Court for consideration of the plaintiff's Motion to Remand [Doc. 8], filed on November 4, 2011. The defendant filed his Response to Motion to Remand [Doc. 9] on November 17, 2011, and a supplement thereto [Doc. 11] on December 2, 2011. At the time of this Order, Plaintiff had yet to file a reply thereto. This Court, having reviewed the motion and the memoranda submitted with regard thereto, finds that the plaintiff's Motion to Remand [Doc. 8] should be **GRANTED**.

## I. BACKGROUND

This action was originally filed in Hampshire County Circuit Court, on September 9, 2011, and arises from an automobile accident that occurred on March 31, 2011, on U.S. Route 50 in Hampshire County, West Virginia [Doc. 5-1]. Pursuant to 28 U.S.C. §§ 1441 and 1446, the defendant removed the case to this Court on October 12, 2011 [Doc. 5].

Although the defendant references 28 U.S.C. § 1331, the defendant actually bases federal jurisdiction upon diversity jurisdiction pursuant to 28 U.S.C. § 1332 under which federal district courts have original jurisdiction if the case involves citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs [*Id.* at 1-2].

On November 14, 2011, the plaintiff filed a Motion to Remand the case to state court [Doc. 8]. The plaintiff provides evidence that the defendant used a West Virginia address before the accident, after the accident, and after the filing of the complaint and the notice of removal [*Id.*]. The defendant responds that he has remained a resident of the state of Maryland because he (1) owns property in Maryland, which he uses as his primary place of residence, (2) has a Maryland driver's license and vehicle registration, (3) is registered to vote in Maryland, and (4) intends to reside in Maryland [Doc. 9].

## II. LEGAL STANDARD

Congress has authorized the federal courts to exercise diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1). "The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" ***West Virginia Univ. Bd. of Governors v. Rodriguez***, 543 F. Supp. 2d 526, 529 (N.D. W.Va. 2008) (quoting ***Maryland Stadium Authority v. Ellerbe Becket Inc.***, 407 F.3d 255, 260 (4th Cir. 2005) (in turn citing ***Mulcahey v. Columbia Organic Chems. Co.***, 29 F.3d 148, 151 (4th Cir.1994))). Federal court construe removal statutes strictly due to concerns about federalism. ***Id.*** (citing ***Shamrock Oil & Gas Corp. v. Sheets***, 313 U.S. 100 (1941)). Accordingly, the party moving for removal has the burden to establish the existence of

federal jurisdiction by a preponderance of the evidence. *Beaver Coal Co., Inc. v. Cabot Oil & Gas Corp.*, 2009 WL 413572 (S.D. W. Va. 2009) (citing *Johnson v. Nutrex Research, Inc.*, 429 F. Supp. 2d 723, 726 (D. Md. 2006)). "If federal jurisdiction is doubtful, a remand to state court is required." *Rodriguez,* 543 F. Supp. 2d at 529 (citing *Maryland Stadium,* 407 F.3d at 260).

A case is between citizens of different states when "there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84 (2005). The question of citizenship "is ultimately one of federal law . . ., although federal courts may consult state law in making a decision . . .." *Long v. Sasser*, 91 F.3d 645, 647 (4th Cir. 1996)(citing *Ziady v. Curley*, 396 F.2d 873, 874 (4th Cir. 1968); and *Rodriquez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1030 (1st Cir. 1988)). "For purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson v. Advance America*, 549 F.3d 932, 937 at n.2 (4th Cir. 2008) (citing *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998)).

Citizenship in a state requires that a person be "both a citizen of the United States and a domiciliary of that State." *Johnson*, 549 F.3d at 937, n.2 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)). "Domicile requires physical presence, coupled with the intent to make the State a home." *Id.* (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Jahed v. Acri*, 468 F.3d 230, 236 (4th Cir. 2006); and *Webb v. Nolan*, 484 F.2d 1049, 1051 (4th Cir. 1973)). A person can have only one domicile, even if he or she may have residences in multiple states. *Mitchell*

3

*v. United States*, 88 U.S. 350 (1874). A change in domicile occurs when the individual has a physical presence in the state and intends to remain in the state indefinitely. *Id.* A party's statements about his or her domicile, "particularly with regard to an intent to retain or establish one . . . are subject to judicial skepticism" and "accorded little weight . . . when they are in conflict with the facts or a party's actual conduct." 13E CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3612 (3d ed. 2009). When a person moves from the state of domicile to a new state, "'unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the existence of some particular profession, office, or calling, it does change the domicil[e].'" *Granite Trading Corp. v. Harris*, 80 F.2d 174, 176 (4th Cir. 1935) (quoting *Ennis v. Smith*, 55 U.S. 400, 423 (1852)).

Domicile is determined at (1) the time that the suit is commenced with the filing of a complaint with the district court or (2) the time that the original action is filed with the state court and the time of removal to the district court. *See* **Lyons v. Weltmer**, 174 F.2d 473 (4th Cir. 1949), cert. denied, 338 U.S. 850 (1949); **Burgess v. Gateway Communications, Inc. - WOWK TV**, 984 F. Supp. 980 (S.D. W. Va. 1997). Where the domicile of a party is in question, the district court must "evaluat[e] . . . all the aspects and circumstances of the individual's situation . . . on a case by case basis." WRIGHT ET AL., *supra* at 13E § 3612. Various factors may be considered, including the following: "current residence, voter registration, location of personal and real property and bank accounts, memberships, place of employment, driver's license, and payment of taxes." **Sanders v. Morris**

4

*Communications Co., LLC*, 2006 WL 3139080 (D.S.C. 2006) (slip op.).

### III. ANALYSIS

In this case, the defendant effected removal asserting the diversity jurisdiction of this Court [Doc. 5]. The plaintiff, Mr. Vandevander, was a citizen of West Virginia at the time of the accident and his death [Docs. 5-1 and 8]. His wife and personal representative, Robyn L. Vandevander, is also a citizen of West Virginia. The defendant alleges that he is a citizen of Maryland [Doc. 9]. In support of this claim, he states that he owns a home in Maryland, which is his primary place of residence [*Id.* at 1-2]. He further states that he has a Maryland driver's license, has registered his car in Maryland, and is registered to vote in Maryland [*Id.*]. Moreover, he states that he "remains a citizen of the state of Maryland by his intent to reside in that state" [*Id.* at 1]. Mr. Jimenez admits to having a physical presence in West Virginia [*See* Doc. 8-4 at 3]; therefore, the determinative issue in this case is the intent element of the domicile test. This Court will examine each factor upon which the defendant relies for his claim of Maryland domicile.

#### A. Property

The defendant claims that his ownership of property in Maryland demonstrates that he is domiciled in Maryland. However, the defendant owns property in Maryland and West Virginia [Doc. 9 at 1-2]. Moreover, the defendant claims a physical presence in both Maryland [*See id.* at 5] and West Virginia [*See* Doc. 8-4 at 3, stating that he was residing at the West Virginia address at the time of an October 10, 2011, proceeding in the Circuit Court of Hampshire County, West Virginia]. However, he does not provide any details as to how his physical presence is divided between the two states.

The defendant claims that his property in Maryland is his primary place of residence;

however, the record does not support this statement. The record reflects that Mr. Jimenez has utilized his West Virginia address for a number of legal proceedings during 2011. One day prior to the traffic accident that was the impetus for this proceeding, Mr. Jimenez listed his West Virginia address on a criminal bail agreement [Doc. 8-1 at 1-2]. A few weeks later, Mr. Jimenez completed an affidavit listing his West Virginia address; the affidavit contained a warning that "False Swearing May Result in Criminal Prosecution . . ." [Doc. 8-2 at 1]. The following month, Mr. Jimenez listed his West Virginia address in a proceeding in the Circuit Court for Montgomery County, Maryland [Doc. 8-3 at 1]. On October 10, 2011, Mr. Jimenez informed the Circuit Court of Hampshire County, West Virginia, that he was residing at the West Virginia address at that time [Doc. 8-4 at 3]. The [d]efendant "was sworn by the Court" at the time that he made this statement [*Id.* at 2].

Mr. Jimenez states that his "utilization of [the West Virginia] address [in various West Virginia proceedings] was a matter of convenience, not citizenship" [Doc. 9 at 5]. However, he is also using the West Virginia address in a legal proceeding in Maryland [Doc. 8-3 at 1]. If Mr. Jimenez chose the address to list in a legal proceeding based upon convenience, then he would presumably list his Maryland address in a legal proceeding in the Circuit Court for Montgomery County, Maryland. This presumption is supported by the fact that Mr. Jimenez did list his Maryland address in a previous legal proceeding in the Circuit Court for Montgomery County [*See* Case Number 58118FL from 2006]. Furthermore, the Case Information Sheet for the current legal proceeding in the Circuit Court for Montgomery County states that "[e]ach . . . [a]ddress . . . for [Mr. Jimenez] is displayed" [Doc. 8-3 at 1]; however, Mr. Jimenez has only his West Virginia address listed, not both addresses. Based upon the evidence presented, Mr. Jimenez's principal residence at the time of the

6

complaint and notice of removal was his West Virginia residence. Other than alleging that he considered his Maryland residence to be his "principal place of residence," Mr. Jimenez provided no evidence to support this claim. As such, this Court concludes that the defendant's ownership of property in Maryland is not a determinative factor in this case.

B.  Driver's License and Vehicle Registration

The defendant claims that his driver's license and vehicle registration in Maryland demonstrate that he is domiciled in that state. As demonstrated in the accident report, Mr. Jimenez did have a Maryland driver's license [Doc. 9-1 at 6] and vehicle registration [*Id.* at 4] at the time of the accident. Mr. Jimenez also states that he will provide proof of licensure and vehicle registration as soon as he receives such documentation from the Maryland Motor Vehicle Administration [Doc. 9 at 2]. On December 2, 2011, Mr. Jimenez filed a supplement to his response, which included license information from the Maryland Motor Vehicle Administration [Doc. 11]. Although the form is difficult to read, it appears that Mr. Jimenez's Maryland driver's license is valid [*See* Doc. 11-1 at 1]. For purposes of analysis, this Court will presume that Mr. Jimenez has maintained both his Maryland driver's license and vehicle registration, particularly at the time the complaint was filed in state court and the defendant removed the case to federal court.

Although a driver's license and vehicle registration are factors to consider when determining a party's domicile, these factors are not dispositive in the Court's determination. Rather, they are part of the total aspects and circumstances considered by the Court. In this case, the accident report reflects that Mr. Jimenez's 2011 Subaru Outback was registered in Maryland [Doc. 9-1 at 4]; therefore, Mr. Jimenez presumably registered the vehicle with Maryland at some point between late 2010 to March 2011. The

7

accident report demonstrates that the defendant had a Maryland driver's license at the time of the accident; however, there is no information as to when the driver's license was obtained or renewed [*See id.* at 6]. As previously stated, this Court will presume that the defendant had a valid Maryland driver's license and vehicle registration at the time the plaintiff filed the complaint in state court and when the defendant removed the case to federal court when it considers the totality of the circumstances.

## C. Voter Registration

The defendant claims that his voter registration in Maryland demonstrates that he is domiciled in that state. Mr. Jimenez provided a copy of his voter information from the Maryland Elections Center website [Doc. 9-2 at 1]. The information reflects that the voter registration was completed on October 1, 1992, and contains his Maryland address [*Id.*]. Although there is no information clearly indicating that the Maryland voter registration is still active, this Court will presume that it was active at the time the plaintiff filed the complaint in state court and when the defendant removed the case to federal court as it considers the totality of the circumstances.

## D. Intent

The defendant claims that Maryland is his domicile because that is his intention. Mr. Jimenez states that he "had the present intent to continue making his home in the State of Maryland" [Doc.9 at 5]. He further states that he is "currently in the process of obtaining a divorce and may eventually relocate to the State of West Virginia but at the time that this lawsuit was commenced, he remained a citizen of the State of Maryland. At the time that the [p]laintiff's Complaint was served, Mr. Jimenez was incarcerated at the Potomac Highland Regional Jail and considered himself a citizen of the State of Maryland " [*Id.*].

Even if this Court were to give Mr. Jimenez the benefit of the doubt as to the time the plaintiff filed the complaint in state court based upon his incarceration, he has not demonstrated by a preponderance of the evidence that he did not intend to remain indefinitely in West Virginia at the time he removed the case to this Court.

The defendant provides a copy of the accident report as evidence supporting his intent to maintain his domicile in Maryland. The accident report lists Mr. Jimenez's Maryland address. However, it is important to note that, as he has stated in his filing, Mr. Jimenez has a Maryland driver's license and his car is registered in Maryland, both presumably listing the Maryland address. Furthermore, the accident report is completed by the West Virginia State Police [*See* Doc. 9-1 at 2], who presumably take the address information from the driver's license and vehicle registration at the time of preparing the report. As such, this evidence does not reflect upon Mr. Jimenez's intent to maintain his domicile in either Maryland or West Virginia; moreover, it does not demonstrate any intent at the time the complaint or the removal were filed.

Furthermore, Mr. Jimenez fails to explain his presence in West Virginia. He provides no explanation as to why his presence is merely temporary and does not equate to an intent to remain indefinitely. In fact, he contemplates settling down in West Virginia when he mentions his current divorce proceedings in Maryland [Doc. 9 at 5]. Given the defendant's failure to explain his presence in West Virginia as temporary, it appears that he has an intent to remain in the state indefinitely. See **Granite Trading Corp.**, 80 F.2d at 176.

### E. Totality of the Circumstances

The factors examined by a district court to determine a party's domicile include the

following: location of personal and real property and bank accounts, payment of taxes, memberships, place of employment, voter registration, driver's license, and current residence. Unfortunately, there is no information pertaining to the defendant's location of personal property and bank accounts, payment of taxes, and memberships; therefore, this Court will not examine these factors. With regard to the place of employment factor, the West Virginia Public Defender Services Affidavit states that Mr. Jimenez had no employment on April 21, 2011. No additional information has been provided regarding employment; therefore, this Court will not rely upon this factor in its determination of domicile, other than to note that there was no employment reason for Mr. Jimenez's presence in West Virginia.

Although the defendant had a Maryland driver's license, vehicle registration, and voter registration, individuals often delay updating these documents after moving to a new state. As such, the mere passive act of failing to obtain documents in West Virginia does not reflect strongly upon Mr. Jimenez's intent to maintain a domicile in Maryland, particularly given the continuing use of the West Virginia address and a West Virginia phone number [*See* Docs. 8-1 at 1-2, 8-2 at 1, 8-4 at 3, and 9-1 at 6]. Given Mr. Jimenez's ownership of property in Maryland and West Virginia, this factor does not weigh in favor of finding a Maryland domicile, particularly given the fact that Mr. Jimenez does not list his Maryland address in the proceeding in the Circuit Court of Montgomery County, Maryland [*See* Doc. 8-3 at 1]. Moreover, the only recent document that lists Mr. Jimenez's Maryland address (the accident report) also contains a West Virginia telephone number as his "home phone" [Doc. 9-1 at 6], thereby confirming his sworn statement to the Circuit Court of Hampshire County, West Virginia, that his current residence is in West Virginia [*See* Doc.

8-4 at 3]. Although residency is not sufficient to find citizenship, it is a factor that should be considered by this Court. See **Johnson**, 549 F.3d at 937 at n.2; and **Sanders**, 2006 WL 3139080.

In addition, Mr. Jimenez's self-serving statements that he "considered himself a citizen of the State of Maryland" at the time the complaint was served upon him [Doc. 9 at 5] and "has the present intent to continue making his home in the State of Maryland" [*Id.*] are undermined by his actions and the facts presented in the motions; as such, these statements will be accorded little weight by this Court. WRIGHT ET AL., *supra*, at 13E § 3612. Mr. Jimenez used his West Virginia address, made a sworn statement in court that he was residing in West Virginia, and did not demonstrate why his physical presence in West Virginia is merely temporary. As such, given his physical presence in West Virginia and his intent to remain indefinitely, this Court finds that Mr. Jimenez's domicile, at least at the time of the removal to federal court, was West Virginia. Even if this Court were not able to determine the defendant's domicile, federal jurisdiction in this proceeding would be doubtful, thereby requiring a remand to state court. **Rodriguez**, 543 F. Supp. 2d at 529, citing **Maryland Stadium**, 407 F.3d at 260.

## IV. CONCLUSION

Because both plaintiff and defendant are citizens of West Virginia for purposes of federal jurisdiction, there is not complete diversity of citizenship, and this case must be remanded to the Circuit Court of Hampshire County. Accordingly, the plaintiff's Motion to Remand **[Doc. 8]** is **GRANTED** and this case is **REMANDED** to the Circuit Court of Hampshire County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the Circuit Court of Hampshire County, West Virginia.

**DATED:** December 5, 2011.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE